THE GLENS FALLS PORTLAND CEMENT COMPANY, Respondent, *v.* THE TRAVELERS' INSURANCE COMPANY, Appellant.

1. FACTORY LAW CONSTRUED. The manifest purpose of the Factory Law (L. 1886, ch. 409, as amd. by L. 1892, ch. 673) was to give more force to the existing rule that masters should afford a reasonably safe place for their servants to work; not that every piece of machinery should be covered or guarded, but that those parts of the machinery which are dangerous to the servants whose duty requires them to work in its immediate vicinity should be properly guarded; nor does the statute attempt to specify how machinery shall be guarded otherwise than as "properly guarded," which in each case is a question of fact depending upon the situation, nature and dangerous character of the machinery.

2. VIOLATION OF FACTORY LAW A QUESTION OF FACT. A setscrew projecting about five-eighths of an inch from a collar at one end of a revolving shaft which is from fifteen to eighteen feet above the floor of a factory, out of reach of employees engaged in operating the machinery, and reached only by a ladder, by which it is approached only for the purpose of oiling the bearing, does not, as matter of law, violate the Factory Law, but the necessity for a guard in such a case is a question of fact.

3. INSURANCE AGAINST LIABILITY TO EMPLOYEES — EFFECT OF JUDGMENT AGAINST EMPLOYER. An insurance company which, by its contract, has agreed to defend actions against an employer for injury to employees, and which has conducted the defense in such a case down to the eve of trial, and has then withdrawn, leaving the employer no reasonable opportunity to prepare a defense in the action, is estopped from claiming that a judgment by default against the employer conclusively establishes the latter's negligence or violation of the Factory Law, which the insurance company sets up as a defense.

*Glens Falls Portland Cement Co.* v. *Travelers' Ins. Co.*, 11 App. Div. 411, affirmed.

(Argued March 29, 1900; decided April 6, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 10, 1896, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis A. Smith* for appellant. At the time the policy was issued, and afterwards until the accident, the setscrew was entirely unguarded, and the plaintiff had express notice of the requirement of the statute to protect it. The clause in the application, promising to conduct all business and maintain all premises to which the proposed insurance may apply, in strict compliance with all statutes, ordinances and by-laws, providing for the safety of persons, was, by its express terms, made a part of the consideration of the policy, and of the policy itself. (*Cogswell* v. *Chubb,* 1 App. Div. 95; *Chase* v. *H. Ins. Co.,* 20 N. Y. 52; *Jackson* v. *S. P., F. & M. Ins. Co.,* 33 Hun, 60; *Ripley* v. *Æ. Ins. Co.,* 30 N. Y. 136; *Alexander* v. *G. F. Ins. Co.,* 66 N. Y. 464; *F. N. Bank* v. *Ins. Co. of N. A.,* 50 N. Y. 45.) There was no waiver of the warranty, or of any provisions of the policy, by the defendant. (*Bank of Chillicothe* v. *Dodge,* 8 Barb. 233; *Merchants' Bank* v. *Spalding,* 9 N. Y. 53; *Stedman* v. *Davis,* 93 N. Y. 32; *Trebilcox* v. *McAlpine,* 46 Hun, 469; *Ripley* v. *Æ. Ins. Co.,* 30 N. Y. 136; *Armstrong* v. *A. Ins. Co.,* 130 N. Y. 560; *G. El. Co.* v. *L. & L. & G. Ins. Co.,* 159 N. Y. 418; *Van Schaick* v. *N. F. Ins. Co.,* 68 N. Y. 442; *Chase* v. *H. Ins. Co.,* 20 N. Y. 52; *Moore* v. *H. F. Ins. Co.,* 141 N. Y. 219.)

*Edgar T. Brackett* for respondent. The provisions of the policy were not violated by the plaintiff, and the defendant never had any defense to plaintiff's claim. (*Spaulding* v. *T. & C. C. Co.,* 13 Misc. Rep. 398; *Freeman* v. *G. F. P. M. Co.,* 70 Hun, 530; *Glassheim* v. *N. Y. E. P. Co.,* 13 Misc. Rep. 174; *Cobb* v. *Welcher,* 75 Hun, 283; *Knisley* v. *Pratt,*

75 Hun, 323; *Horton* v. *V. I. W. Co.*, 13 App. Div. 508; *Slocovich* v. *O. M. Ins. Co.*, 108 N. Y. 56; *Murray* v. *N. Y. L. Ins. Co.*, 85 N. Y. 236.) If the defendant ever had a defense to plaintiff's claim, such defense has been waived. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *Trippe* v. *P. F. Society*, 140 N. Y. 23; *Roby* v. *A. C. Ins. Co.*, 120 N. Y. 510; *Ins. Co.* v. *Eggleston*, 96 U. S. 572; *McNally* v. *P. Ins. Co.*, 137 N. Y. 389; *Shay* v. *N. B. Society*, 54 Hun, 109; *Haas* v. *M. F. Ins. Co.*, 49 Hun, 272; *Benninghoff* v. *A. Ins. Co.*, 93 N. Y. 495; *Pratt* v. *N. Y. C. Ins. Co.*, 55 N. Y. 505; *Shearman* v. *N. F. Ins. Co.*, 46 N. Y. 526.) Due notice of the accident was given to the defendant. (*Weed* v. *H. B. F. Ins. Co.*, 133 N. Y. 394; *Bennett* v. *L. C. M. Ins. Co.*, 67 N. Y. 274; *Griffey* v. *N. Y. C. Ins. Co.*, 100 N. Y. 417.)

HAIGHT, J. This action was brought upon a policy of insurance issued by the defendant to the plaintiff in November, 1894, by which defendant company undertook to insure the plaintiff for the term of one year against loss from liability to employees who might accidentally sustain bodily injuries while in the plaintiff's employ. The policy, among other things, provided that in case an accident should occur to an employee and a suit should be brought against the cement company to recover damages the insurance company should have the right to control the defense and defend the action on behalf of the cement company. In the application upon which the policy was issued the cement company agreed "to conduct all business and maintain all premises to which the proposed insurance may apply, in strict compliance with all statutes, ordinances and by-laws provided for the safety of persons."

On the 28th day of December, 1894, one Jasmine was employed by the plaintiff to attend a machine known as a clinker crusher. There extended through the building a revolving shaft from fifteen to eighteen feet above the floor, at one end of which there was a collar to prevent the end-

51

thrust. This collar was fastened to the shaft by means of a setscrew which projected about five-eighths of an inch from the collar and was immediately adjoining the bearing upon which the shaft revolved. Under this bearing was constructed a small platform which was reached by a ladder which was used only for the purpose of reaching the platform when necessary to oil the bearing. On the day in question, Jasmine ascended the ladder to the platform and undertook to oil the shafting at the point of the bearing. In doing so his sleeve was caught by the projecting setscrew and he was twisted around the shafting and seriously injured. He subsequently brought an action against the plaintiff company, alleging negligence on its part, which resulted in the recovery of a judgment, by default, for the sum of $2,000 damages, which sum, with costs, the plaintiff has been compelled to pay, and which amount it now seeks to recover of this defendant under the policy. It further appears that the plaintiff gave notice to the defendant, through its local agent, of the accident, shortly after it occurred, and that when the action was brought the defendant employed an attorney who answered the complaint on behalf of the cement company and took charge of the defense of that action down to the Saturday preceding the Monday on which the case was to be moved for trial at the circuit; that, at that time, the insurance company disclaimed liability under the policy and declined to assume any further charge of the defense.

At the conclusion of the trial of this action the defendant's counsel moved for a nonsuit upon various grounds, which was denied, the court holding that there were questions of fact to be submitted to the jury, but remarked that, if both sides insisted upon a direction of a verdict and would leave the questions of fact to be decided by the court, it would dispose of the case. Thereupon both parties requested the court to direct a verdict, and in accordance with such request a verdict was directed in favor of the plaintiff for the amount demanded in the complaint, the court stating as one of its reasons for so doing that there was not sufficient evidence from which the

jury, or the court, in the place of the jury, could find that this setscrew was dangerous or one that was required to be further guarded.

· The controlling question in the case brought up for review by the exceptions is the claim of the defendant that the plaintiff had forfeited its right to indemnity under the policy, for the reason that it had failed to maintain its premises in compliance with the Factory Law of 1886, chapter 409, as amended by chapter 673 of the Laws of 1892. That law, so far as is material here, provides that " All vats, pans, saws, planers, cogs, gearing, belting, shafting, setscrews and machinery of every description therein shall be properly guarded." The contention is that the plaintiff violated this statute by its neglect to guard the setscrew which caught in the clothing of Jasmine. The trial court, in construing this statute in connection with the facts presented by the evidence in this case, held that a question of fact arose as to whether the screw in question was properly guarded, and for that reason denied the motion for a nonsuit, and after the case had been submitted by both parties to the court for its determination of the facts as well as the law, the court ordered judgment for the plaintiff, thus finding that the screw was properly guarded. The judge writing the opinion in the Appellate Division seems to have differed with the trial judge in his determination of this fact, but the order entered upon the decision of that court in *all things* affirmed the judgment of the trial court.

There are but few cases to be found in our reports in which the provisions of the Factory Law have been construed, and those cases afford but little aid in construing the provision here involved. The manifest purpose of the enactment was doubtless to give more force to the existing rule that masters should afford a reasonably safe place in which their servants are called upon to work. We think, however, that the legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. What evidently was intended was that those parts of the machinery which were dangerous to the servants

whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors. Human foresight is limited, and masters are not called upon to guard against every possible danger. They are required only to guard against such dangers as would occur to a reasonably prudent man as liable to happen. (*Cobb* v. *Welcher*, 75 Hun, 283.) In this case, as we have seen, the shafting was located from fifteen to eighteen feet above the floor of the factory, and the collar containing the offending screw was at one end of the building high above and out of the reach of the servants who were engaged in operating the machinery below. It could only be approached by a ladder, and the only necessity of approaching it at all was for the purpose of oiling the bearing under the shafting. It does not appear that any accident of this character had ever happened before at this bearing, or that it had ever occurred to any of the persons operating the factory that such an accident was possible or liable to occur. The statute does not attempt to specify how machinery shall be guarded otherwise than as "properly guarded." The necessity for the guard, and the character and description of the guard must, of necessity, depend upon the situation, nature and dangerous character of the machinery, and in each case becomes a question of fact. We think, under the evidence in this case, a question of fact was presented for the determination of the trial court, and that it could not be held, as a matter of law, that the screw in question was not properly guarded. It follows that the defendant was not necessarily relieved from liability under the policy by reason of the failure of the plaintiff to guard the screw in question, and that, consequently, the defendant had no right to withdraw from the defense of the action brought by Jasmine against the plaintiff.

It is contended that there has been an adjudication in the action of Jasmine against the cement company, that it was guilty of negligence in not guarding the setscrew in question. Undoubtedly, that adjudication is binding upon the cement company in so far as Jasmine is concerned. The judgment

roll in that action was introduced in evidence in this action. It fixed the amount that the cement company had been compelled to pay Jasmine; but we do not think that the adjudication in that action is binding upon the plaintiff in this action, for the reason that, under the contract of insurance, the insurance company had agreed to defend the action, and had conducted such defense down to the eve of the trial and then withdrew, leaving the cement company no reasonable opportunity to prepare its own defense to the action. Had the insurance company continued its defense it might have shown upon the trial that the cement company was free from negligence in the matter, and thus avoided a judgment against that company; but having withdrawn from the defense of that action improperly and permitted judgment to go against the cement company by default, it is now estopped from claiming that the adjudication thus obtained precludes the plaintiff from insisting upon the indemnity which the defendant had contracted to render.

Some exceptions were taken to the admission and rejection of evidence, but none which, we think, requires a reversal.

The judgment should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, CULLEN and WERNER, JJ., concur; LANDON, J., not sitting.

Judgment affirmed.