(71 App. Div. 47.)

#### FOSTER v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

INJURY TO SERVANT—FACTORY ACT—FAILURE TO GUARD MACHINERY.

The failure of a manufacturer to guard a sprocket wheel forming a part of new machinery being installed, and which has never been used, though attached to a shaft, which has been used, is not a violation of Laws 1886, c. 409, § 8, as amended by Laws 1892, c. 673, requiring manufacturers to properly guard cogs, belting, shafting, set screws, etc., and therefore is not negligence rendering the manufacturer liable to a servant injured thereby while installing the machinery.

O'Brien, J., dissenting.

Appeal from trial term, Orange county.

Action by Joseph Foster, Jr., against the International Paper Company, for injuries received while in the employ of defendant. From a judgment for plaintiff and an order denying a new trial, the defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Alfred W. Gray, for appellant.

Thomas Watts, for respondent.

INGRAHAM, J. The defendant in this action was engaged in the operation of a paper mill at Niagara Falls, in this state, and the plaintiff was at work, at the time of the accident, in installing some new machinery in the mill. On the morning of the 8th of June, 1900, the plaintiff was caught by a revolving shaft, and severely injured, and it is to recover for such injuries that this action was brought. The complaint alleged as the negligence of which the defendant was charged that the "shafting and machinery were not constructed or protected in accordance with law, and that the set screw and the sprocket wheel adjoining said set screw upon said shafting were not protected as provided by law, and it did not constitute a safe place or safe tools and machinery to this plaintiff, as the law provides; and that the defendant was negligent and careless in not furnishing safe tools, implements, and machinery, and not protecting the same, and not furnishing a safe place in which to perform the work he was obliged to perform; and that said place was defective by reason of its not being

properly lighted,—all of which caused or contributed to the cause of the injuries hereinbefore set forth." The plaintiff testified that he was at work in the mill on Sunday, January 7, 1900, and continued at work until the time of the injury, which was between 4 and 5 o'clock the next (Monday) morning; that just before the accident he was at work at the top of the building, sawing off a steel shaft; that a Mr. Shedd, who was in the employ of the defendant, called to him to come down to the cellar to throw a belt on the shaft; that on his going to the cellar, Mr. Shedd was standing at the loose end of the shaft, and said, "Let's throw this belt on." This belt was on a loose pulley, and the object was to pull it on to a pulley fast to the revolving shaft, by which motion would be communicated to the machinery on the floor above. The plaintiff took hold of the belt to pull it on to this pulley so that the motion of the shaft would roll it over, but in some way the belt slipped, and as it slipped the plaintiff stepped back against the shaft, and a sprocket wheel, or the set screws that held the sprocket wheel to the shaft, caught in his clothes, and drew him around the shaft, striking him against the wall, and causing injuries which resulted in the amputation of one of his feet and severe injuries to the other foot and other parts of the body. This sprocket wheel was attached to the shaft by set screws, and the teeth of the wheel on which a chain was to be installed to communicate motion to the machinery probably caught the plaintiff's clothing, and caused him to be thrown around the shaft as it revolved. The plaintiff testified that at the time of the injury he and other employés of the defendant were engaged in installing new machinery in the factory; that on this occasion they were making some changes in the machinery. The mill was not being run, but the shaft was kept going for the purpose of making those changes in the machinery. They were starting the new machinery, and the plaintiff was at work helping to get the machinery in order, and seeing that it worked right; the shaft and pulley and sprocket wheel being part of the new machinery that was being installed. The plaintiff further testified as to this shafting and the pulleys:

"I don't know when it was put in. It was just being completed. It wasn't completed yet. I think that was the first time the shaft was run,—just started up. I don't know what the object was of starting it,—whether it was being run for the purpose of doing work with it, or if it was only being run to try it. This was Monday morning. It had never been used for the purposes of the defendant's business, that I know of. I don't know whether it had or not."

There was further evidence that this shafting had been there about three weeks, and that during that time the workmen had been engaged in connecting the machinery in the upper part of the building with this shaft, although part of the time the shaft had been used for the purpose of running some machinery in the rest of the building. This particular sprocket wheel, however, had not yet been used, as the chain attachment had not been put in place; and the belt that the plaintiff tried to pull on the wheel was at the time being put in place, and had not yet been used to run the machinery. On behalf of the defendant, the master mechanic, Jones, testified that this sprocket wheel was

fastened to the shafting by keys and set screws, and that it was to be
guarded by a framework around it, leaving a slip for the chain to go
through when the machinery was installed; that the sprocket wheel
was put in in anticipation of running another machine with it; that the
plaintiff and the others at work at the time were engaged in installing
this new plant. The superintendent of the mill testified that the pul-
leys that the plaintiff was engaged in adjusting were part of the work
that they expected to have completed that night, as it would have to
be put in before the mill could be started; that they were, on the night
in question, actually engaged in installing this new machinery, and
were connecting it with the shaft. Upon this evidence, the court
stated that this shaft was a permanent structure; that the duty of the
defendant, under the factory act, to protect and guard this sprocket,
had already accrued, and that it was in the failure to guard it that the
neglect, if any, consisted which makes the defendant liable. The de-
fendant moved to dismiss the complaint and direct a verdict for the
defendant on various grounds, one of which was that there was noth-
ing in the case which would bring it within the provisions of the fac-
tory act. This motion was denied, and the defendant excepted. The
judge then charged the jury that:

> The "duty to guard dangerous machinery is a duty which is prescribed
> by statute. * * * Now, there is a law which requires the guarding of
> certain machinery such as this. We can confine our attention here to this
> sprocket wheel, because it is the sprocket wheel only that is in question.
> You needn't bother about the pulleys, or the absence of a loose pulley,
> at all. That has nothing to do with the case. The question is just a ques-
> tion of the danger which caused the accident,—the danger of a revolving
> sprocket wheel with projecting teeth and projecting set screws. That is
> the danger that is in question here; and the only negligence of the defendant
> in this case, if there is any foundation for a verdict against it, is their
> failure to so guard that sprocket wheel as to make it reasonably safe. I
> don't say that they were even so bound to guard it as to make it reasona-
> bly safe, but they were bound to exercise ordinary care to that end. Did
> they exercise any care to that end here? It wasn't housed in any manner,
> and to any one who gets close to it it presents all the dangers which are
> inherent in its construction. * * * The real question about it is, was
> that sprocket guarded as due care required to avoid injuring the man who
> should come into the neighborhood of it to put that belt on? That is the
> question. Was it? There is the crucial question in this case. Some ques-
> tion was made during the case as to whether the time had arrived when
> that should be housed, or in some way covered, so as to afford the proper
> protection to people who should come near it. It appears that that shaft
> upon which this sprocket was set had been set some three weeks before,
> and that it had been in use actually about a week; that is, in use for the
> general purposes of the mill. Of course, they were extending it. They
> were about to attach it (this belt was a part of this attachment) to ma-
> chinery which should move another carrier; but, while some attachments
> to it might be in process of installment, the shaft itself and the appliances
> which were upon it were there to stay, and were being operated for the gen-
> eral purposes of the defendant's business, and the time had come when, if
> ever, that sprocket needed to be guarded, so that you can dismiss that from
> your minds,—any question of that sort from your minds."

Counsel for the defendant called the attention of the court to this
charge, saying: "Your honor charged the jury, as I understood it,
that the time had come when, if ever, the sprocket had to be guard-
ed;" to which the court answered, "Yes," and to that the defendant

excepted. The court then replied: "By that I mean that this appliance had been installed and put to work about the business of the factory, and, although there were to be some further extensions on it, and connections with it, that is immaterial. This part (this sprocket wheel) was revolving upon a shaft which was doing the work (the ordinary work) of the factory." The counsel for the defendant excepted to this statement to the jury, and asked the court to charge that "this sprocket wheel was not at this time in actual operation, and that the duty of guarding it and caring for it was modified by the fact that it had not been put into use." This the court refused, and the defendant excepted, to which the court replied: "The fact that it had not been put in use is immaterial. The significant fact is that it was upon the shaft which was being moved about the business of the factory and not experimentally." The negligence of the defendant was thus based upon a failure to comply with the requirements of the factory act. This provision is contained in section 8, c. 409, Laws 1886, as amended by chapter 673, Laws 1892, and provides:

"It shall be the duty of the owner of any manufacturing establishment, or his agents, superintendent or other person in charge of the same, * * * and wherever possible machinery therein shall be provided with loose pulleys; all vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, and machinery of every description therein shall be properly guarded."

The question is whether the evidence justifies a finding that the defendant failed to comply with the provisions of the statute. The duty imposed by this statute was considered by the court of appeals in Glens Falls Portland Cement Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897. Commenting upon this clause of the factory act, Judge Haight says:

"The manifest purpose of the enactment was, doubtless, to give more force to the existing rule that masters should have a reasonably safe place in which their servants are called upon to work. We think, however, that the legislature could not have intended that every piece of machinery in a large building should be covered or guarded. What evidently was intended was that those parts of the machinery which were dangerous to the servants, whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors."

In this case we have an employé engaged, not in operating machinery in the conduct of a manufactory, but in installing new machinery in a factory. The particular work on which the plaintiff was engaged was in connecting a new shaft with new machinery. This particular portion of the shaft upon which the plaintiff was at work had never been used, and the belt that was then being attached was part of the new machinery that was being installed. The sprocket wheel which was attached to this shaft had not been used; and although one witness says that all this shafting had been up about three weeks, and the shaft had been used in connection with the work of the factory for one week, the construction work on the shaft was still in progress. The portion upon which the plaintiff was at work and that caught his clothes and caused the injury was uncompleted, and it was while he was attaching this new shaft to the

other new machinery that the plaintiff was injured. The plaintiff, when he assisted in this work, understood that he was at work on an uncompleted shaft. The whole shafting was in the cellar of the building, not frequented by the regular employés of the defendant engaged in the manufacturing operations, or in a position where it would be dangerous to the employés engaged in such manufacturing operations; for, so far as appears, in the operation of the machinery for the use of the factory no persons would work in the vicinity of this shaft. There is nothing in the statute, as I read it, and as construed in the Glens Falls Company Case, to which attention has been called, that requires an employer to cover or guard machinery in the course of construction so that persons engaged in constructing it would not be injured. From the nature of things, a guard to this machinery could not be properly constructed until the machinery itself was completed. And I can find nothing in the statute which would justify the court in holding that, where machinery is in the course of construction, the uncompleted parts of the machinery must be guarded, so that those engaged in finishing its construction shall not be injured. Upon this evidence I do not think the court was justified in instructing the jury that the defendant had violated the statute in not protecting and guarding this particular sprocket wheel or shaft.

There are several other questions presented by the record which present serious questions, but, in view of the conclusion at which we have arrived upon this question, it is not necessary that they should be determined.

It follows that the judgment below and the order denying a new trial must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. (dissenting). Evidence was presented from which the jury might have inferred negligence upon the part of the defendant not only in violating the factory act, but in not providing within a reasonable time guards to the machinery and a belt shifter, and in directing the plaintiff to work in a place which was not safe. And there was also evidence to support the finding that the plaintiff was free from contributory negligence. He was a laborer, and was not, therefore, as well able to determine the risks, excepting such as were entirely obvious, as a skilled mechanic, or one who had experience with machinery. A fair inference is that he undertook to adjust the belt as directed by the defendant, and for that purpose was allowed to place himself in a position of danger, which danger was not obvious, but which, from the testimony, the jury could properly infer the defendant knew, or had reason to know, existed. My conclusion is that the plaintiff made out a prima facie case of negligence, and, the issues having been properly submitted to the jury, the verdict should not be disturbed. I therefore dissent from the majority of the court, thinking, as I do, that the judgment should be affirmed.