JOHN H. LARKIN, as Administrator, etc., of MARY LARKIN, Deceased, Appellant, *v.* UNITED TRACTION COMPANY, Respondent.

*New trial — when granted because the verdict is contrary to the evidence — direction of a verdict, when proper.*

A judge, presiding at a jury trial, may set aside the verdict and direct a new trial, although the case was one that was necessarily submitted to the jury, and in many cases even where the evidence given was sufficient to sustain the verdict.

Where the right of trial by jury exists and the evidence presents an actual issue of fact, the court has no power to direct a verdict.

The court, however, may direct a verdict if there is no evidence, or insufficient evidence, to support an opposite verdict, or if the proof which has been introduced on one side is conclusively answered, so that no question as to credibility and no issue of fact remains.

APPEAL by the plaintiff, John H. Larkin, as administrator, etc., of Mary Larkin, deceased, from an order of the Supreme Court, made at the Albany Trial Term and entered in the office of the clerk of the county of Albany on the 13th day of January, 1902, setting aside a verdict theretofore rendered in favor of the plaintiff and directing a new trial of the action.

*Mark Cohn* and *Amos Van Etten*, for the appellant.

*Patrick C. Dugan*, for the respondent.

CHASE, J.:

This is an action to recover damages for the alleged negligence of the defendant.   On the trial plaintiff recovered a verdict of

$1,000. A motion was made on the minutes to set aside the verdict and grant a new trial. The justice presiding at the trial entertained the motion and on a subsequent day heard the arguments of counsel thereon and after further deliberation granted the motion on the grounds: 1. That the verdict was contrary to the law. 2. That the verdict was contrary to the evidence and against the weight of evidence.

On the 21st day of July, 1900, Mary Larkin, a girl between seven and eight years old, was run over and killed by one of the defendant's trolley cars in the city of Albany. The accident occurred a short distance south of Little State street on South Pearl street, while the deceased was crossing diagonally from the east to the west side of said street, about in front of the building in which plaintiff and his family then resided. A brother of the deceased, fourteen or fifteen years old, testified that immediately before the accident he came from the east through Little State street, and crossed South Pearl street diagonally to the house, and at that time a sprinkling cart was going north, on the east side of the street, and that he looked and did not see a car. He says that when he arrived at the house he looked around and saw a car coming from the north, and that there was nothing else to be seen in the street. He says that the gong on the car was not rung. While on his way home he saw his sister, the deceased, and a little brother, then about six years old, playing in Little State street. He further testified: " The next I saw my brother or sister was, she was just about to go on the tracks to cross the tracks, both of them, they had hold of each other's hands. The car was right behind them, I don't know how close; about six feet away. My little sister was just stepping on the track at that time; my little brother was just behind her; he had hold of her left hand; they were going over almost the same direction that I came, over the same way. They were looking towards the south, just as I was. My little sister was nearest to the house, the car was going south, they were facing towards the house." He further says that they were running as fast as his little brother could go and that his sister was struck by the fender, which was one foot from the ground, and she was rolled under it, and the forward wheels ran over her. After the car stopped, her body was between the rear wheels. He further testified, " When I heard the

car coming and looked around, the motorman was looking towards the west, looking toward the side towards the house, I believe. The side of the street that I was on. He was looking like that (indicating by turning his head to the right) almost behind. The car was going south, and he turned like that (indicating while standing with his head turned over his right shoulder). Then I shouted to him and he looked toward me and then he looked toward the front of the car and when he saw the little girl was under the car he tried to stop it. Previous to the time I have just stated I could not see him do anything to the car." He testified that the car was stopped opposite the entrance to a certain coal yard which is about ninety-five feet from the place where plaintiff claims the motorman was when he first saw the children. Many of the bones of the head, body and limbs of the deceased were broken and crushed.

The plaintiff did not produce any other witnesses who saw the accident, but did produce two witnesses who corroborated the evidence of the deceased's brother as to the place where the car stopped after the accident.

The driver of the sprinkling cart was produced and testified that he did not know anything about the accident and did not hear of it until he was told of it by one of the defendant's employees the following night.

The little brother was struck by the side of the car but was not injured. He was produced by the plaintiff as a witness. The justice presiding at the trial would not allow him to be sworn, but took his unsworn statement in behalf of the plaintiff. Subsequently the justice stated that he believed that he was in error in receiving the unsworn statement in a civil action, and ordered that the same be stricken from the record, and the jury were directed to disregard it entirely in their examination of the case.

The defendant claims that the gong was rung at the street crossing a short distance north of the place where the accident occurred, and that the motorman was attentive to his duties. The motorman testified that he noticed a sprinkling cart coming north on the east side of the street, but did not see any children; that, as he was partially past the sprinkling cart, two little boys ran across from east to west in front of the car and that he dropped his fender; applied the brakes and reversed the power, and that, as he got to the

rear end of the sprinkling cart, the deceased ran from behind the cart and hit the east end of the fender and fell upon it, but that she caught her arm under the fender and rolled under the car. He testified that the car stopped about twenty-five or thirty feet south of the house. The motorman was corroborated in part by the conductor and four other witnesses. No person other than the motorman claims to have seen two boys run across the street in front of the car immediately before the accident, and the boys were not produced on the trial.

Applying the rule as recently stated by the Court of Appeals in *Fealey* v. *Bull* (163 N. Y. 397) and in *McDonald* v. *Metropolitan Street Railway Co.* (167 id. 66) to the facts and circumstances disclosed by the record in this case, the trial justice was right in denying the defendant's motion, made at the close of the plaintiff's testimony and again at the close of the trial, for a dismissal of the complaint. A verdict may be set aside, however, and a new trial granted, although the case is one that was necessarily submitted on the facts to the jury. (*Ludeman* v. *Third Avenue R. R. Co.*, 30 App. Div. 520.)

In *McDonald* v. *Metropolitan Street Railway Co.* (*supra*) the court, in speaking of a case where a verdict was directed by the court, said : " The rule that a verdict may be directed whenever the proof is such that a decision to the contrary might be set aside as against the weight of evidence would be both uncertain and delusive. There is no standard by which to determine when a verdict may be thus set aside. It depends upon the discretion of the court. The result of setting aside a verdict and the result of directing one are widely different and should not be controlled by the same conditions or circumstances. In one case there is a re-trial. In the other the judgment is final. One rests in discretion ; the other upon legal right. One involves a mere matter of remedy or procedure. The other determines substantive and substantial rights. Such a rule would have no just principle upon which to rest.

" While in many cases, even where the evidence is sufficient to sustain it, a verdict may be properly set aside and a new trial ordered, yet, that in every such case the trial court may, whenever it sees fit, direct a verdict and thus forever conclude the parties, has no basis in

the law which confides to juries and not to courts the determination of the facts in this class of cases.

"We think it cannot be correctly said in any case where the right of trial by jury exists and the evidence presents an actual issue of fact, that the court may properly direct a verdict. So long as a question of fact exists, it is for the jury and not for the court. If the evidence is insufficient, or if that which has been introduced is conclusively answered so that, as a matter of law, no question of credibility or issue of fact remains, then the question being one of law, it is the duty of the court to determine it. But whenever a plaintiff has established facts or circumstances which would justify a finding in his favor, the right to have the issue of fact determined by a jury continues, and the case must ultimately be submitted to it.

"The credibility of witnesses, the effect and weight of conflicting and contradictory testimony, are all questions of fact and not questions of law. If a court of review having power to examine the facts is dissatisfied with a verdict, because against the weight or preponderance of evidence, it may be set aside, but a new trial must be granted before another jury, so that the issue of fact may be ultimately determined by the tribunal to which those questions are confided. If there is no evidence to sustain an opposite verdict, a trial court is justified in directing one, not because it would have authority to set aside an opposite one, but because there was an actual defect of proof, and, hence, as a matter of law, the party was not entitled to recover. (*Colt* v. *Sixth Ave. R. R. Co.*, 49 N. Y. 671 ; *Bagley* v. *Bowe*, 105 N. Y. 171, 179.)"

"In such cases as this, where the trial judge who heard the testimony and saw the witnesses has set aside the verdict because it is against the weight of evidence, great weight is to be attached to his conclusion, and unless the appellate court can clearly see that he is wrong in his decision, the order granting a new trial should be affirmed." (*Reynolds* v. *N. Y. Central & H. R. R. R. Co.*, 20 App. Div. 339.)

The learned trial justice may have felt that the unsworn statement made in the presence of the jury by the little brother of the deceased, had, notwithstanding his instructions, influenced the jury in their deliberations upon the case to the prejudice of the defendant.

The order setting aside the verdict and granting a new trial did did not make any provision for the costs of the trial in which the verdict was rendered. It should, in this case at least, have given the plaintiff costs to abide the event.

The order appealed from should be modified by adding thereto, " Plaintiff to have costs of the trial to abide the event," and as so modified affirmed, with costs in this court to the defendant to abide the event.

All concurred.

Order appealed from modified by adding thereto " Plaintiff to have costs of the trial to abide the event," and as so modified affirmed, with costs in this court to the defendant to abide the event.