(99 App. Div. 47)

## WALKER v. NEWTON FALLS PAPER CO.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. MASTER AND SERVANT—PERSONAL INJURY—SAFE APPLIANCES—EVIDENCE—VERDICT—SETTING ASIDE.

Plaintiff, while engaged in repairing a freight elevator, was injured by being caught in a set screw in a revolving shaft operating a machine. It was necessary for him to approach the elevator machinery by way of the shaft. He did not see the set screw, nor know of its existence. Employés operating the machine were obliged to go to and about the set screw. There was some evidence that prior to the accident the set screw had been covered, but that the covering had been removed, and not replaced. *Held*, that whether the labor law (Laws 1897, p. 480, c. 415, § 81, as amended by Laws 1899, p. 353, c. 192), providing that all set screws shall be properly guarded, was applicable, or whether the common law governed, the question whether the set screw was properly guarded was a question of fact, authorizing the court to set aside a verdict for plaintiff as against the weight of the evidence.

2. VERDICT—SETTING ASIDE—POWER OF COURT.

A verdict may be set aside, and a new trial directed, though the case is one that was necessarily submitted to the jury.

Appeal from Trial Term, St. Lawrence County.

Action by Isaiah Walker against the Newton Falls Paper Company. From an order setting aside a verdict rendered by a jury in favor of plaintiff, he appeals. Affirmed.

The defendant is a domestic corporation engaged in the manufacture of paper. Prior to August 2, 1901, the plaintiff, a carpenter, had for two years been employed by the defendant not only on woodwork, but also on shafting, and in making repairs and doing such work in the defendant's mill as he was directed to do. On that day a freight elevator, or the machinery connected therewith, became out of repair, and the defendant's superintendent said, "That old elevator has broken down," and directed the plaintiff and another employé "to go and repair it." The elevator was run in wooden grooves, and was operated by means of a wire cable which wound around a drum. The drum was attached to a shaft suspended in a room above and adjacent to the elevator well. The shaft and drum were put in motion by means of a gear, belt, pulley, and cogwheels attached to a frame extending downward from the fastening of the shaft and drum for about 3 feet. Under this drum and shaft, and close to the elevator well, was a large tub, 12 feet high and 12½ feet in diameter. The cover to this tub, which is known as a "stuff chest," made a platform which was 2 feet below the bottom of the frame which held the shaft, drum, and gearing which operated the elevator. The space between the platform made by the top of the tub and the floor above was from 5 to 6 feet, and the room in which the tub was situated was dark. Within the stuff chest was arranged an agitator to mix the liquid

pulp contained therein, and this agitator was put in motion by means of a horizontal shaft, with gearing extending across the top of the tub, and from 6 to 8 inches above the same. The shaft rested on wooden crosstrees fastened to the top of the tub. About 18 inches from the outer end of the shaft was a pulley, upon which ran the belt that put the agitator in motion. The shaft was parallel with the lower edge of the frame that held the cogwheels that ran the elevator, and about 18 inches in front of the same. For the purpose of holding the agitator shaft from slipping or binding, a collar was placed close to the inner box, which collar was about 2 inches wide and five-eighths of an inch thick, and it was held in place by a set screw which projected about 1¼ inches from the collar. The space between the set screw and the pulley on which the belt ran which operated the agitator was about 2 feet. There were also some pipes that ran in the space between the top of the tub and the floor above the same. To get into this dark room over the tub, there was a small hole in the wall, leading from a platform on the stairs which ran along the side of the elevator well. The plaintiff and his assistant repaired the grooves of the elevator, but, as the elevator would not then run, they went into the dark room on top of the tub. The plaintiff carried a lantern, and went to the machinery that operated the elevator, without going in front of the same where the shaft that contained the set screw was revolving. The elevator cable was out of place, and the plaintiff put the cable on the drum, and then turned the wheel that operated the elevator. He found that the platform of the elevator would raise about two or three feet, and then it would drop down again, which indicated that there was some defect in the cogwheels that it was necessary for him to repair. To get to the cogwheels, it was necessary for him to approach the frame holding the machine, in front, and by way of the agitator shaft. He came in front of the agitator shaft, but could not get close enough to see the cogs without stepping over it. He stepped over the shaft, and the set screw caught in the bottom of his trousers, and he was seriously injured, to recover damages for which injury this action is brought. Plaintiff did not see the set screw, and did not know of its existence. In the top of the tub is an opening or manhole, to which place an employé of the defendant is obliged to go every half hour when the mill is in operation to ascertain the amount of liquid pulp in the tub. This opening is three or four feet from the set screw. It was necessary also for employés of the defendant to go to and about the set screw for the purpose of oiling and repairing the machinery running the elevator, and also the machinery running the agitator. Plaintiff had twice previously been to the elevator machinery over the tub to make repairs. The way the plaintiff went to the machinery was the only way that he could get to the place that then required repairs. There is some evidence that prior to the accident this set screw had been covered with boards, but that such covering had been removed several weeks before the accident by the defendant, when repairing the top of the tub, and that such covering had not been replaced. The set screw was wholly uncovered at the time of the accident. On the trial the plaintiff obtained a verdict of $5,000, but it was set aside by the judge before whom the case was tried.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

Thomas Spratt, for appellant.

Purcell, Walker & Burns (Thomas Burns, of counsel), for respondent.

CHASE, J. Apart from any statute, it is the duty of employers to furnish a reasonably safe place for their employés to work. Section 81 of the labor law (chapter 415, p. 480, of the Laws of 1897, as amended by chapter 192, p. 353, of the Laws of 1899) provides that all set screws shall be properly guarded. In Glens Falls Cement Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897, the court, in speaking of the factory law (chapter 409, p. 629, Laws of 1886, as amended by chapter

673, p. 1372, of the Laws of 1892), which contained substantially the same provision as said labor law in regard to guarding machinery, say:

"There are but few cases to be found in our Reports in which the provisions of the factory law have been construed, and those cases afford but little aid in construing the provision here involved. The manifest purpose of the enactment was doubtless to give more force to the existing rule that masters should afford a reasonably safe place in which their servants are called upon to work. We think, however, that the Legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. What evidently was intended was that those parts of the machinery which were dangerous to the servants whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize as far as practicable the dangers attending their labors."

The court, in submitting to the jury the question of the defendant's negligence in this case, assumed that the plaintiff was entitled to have the jury consider the provisions of the labor law as bearing upon the question of its duty in furnishing to the plaintiff a reasonably safe place in which to work. It cannot be said, as a matter of law, that the defendant obeyed said statute, and that the set screw was properly guarded. Whether the set screw was or was not properly guarded, within the terms of said statute, is a question of fact. It is said in Glens Falls Portland Cement Co. v. Travelers' Ins. Co., supra:

"The necessity for the guard, and the character and description of the guard, must of necessity depend upon the situation, nature, and dangerous character of the machinery, and in each case becomes a question of fact. We think, under the evidence in this case, a question of fact was presented for the determination of the trial court, and that it could not be held, as a matter of law, that the screw in question was not properly guarded."

The majority of this court, in Shaw v. Union Bag & Paper Co., 76 App. Div. 296, 79 N. Y. Supp. 276, in referring to the labor law, and to an injury to a painter's helper caused by a set screw, said:

"Does the act in question define the duties of an employer towards an employé under such conditions? I think not. As stated in the act, it is for the 'protection of employees operating machinery.' That is, those whose duties require them to work about machinery in motion—those who cannot do their work except when assisted by such motion, and therefore must work in the midst of it."

I express my individual opinion in saying that this act should be construed in view of the general purpose of the act, and for the benefit of all employés whose duties require them to work upon, or in the immediate vicinity of, moving machinery. The special danger arising from the failure of an employer to properly guard machinery is as great to employés who are required to perform their work upon or in the immediate vicinity of moving machiney, when such work is not assisted by the motion of the machinery itself, as to such employés who cannot perform their work without the assistance of such motion. The language of the catchwords at the beginning of the section containing the direction in regard to properly guarding machinery should not be held sufficient to materially limit the purpose of the act. The case of Foster v. International Paper Co., 71 App. Div. 47, 75 N. Y. Supp. 610, is one where the accident occurred while the machinery was being installed for use.

A set screw is not readily seen when a shaft or machine to which it is attached is in motion, and the serious consequences of being caught on a revolving shaft or machine make an uncovered and unguarded screw, which extends beyond the general surface of the shaft or machine, a thing of peculiar danger. There is evidence that the danger in this case had been recognized by the defendant, and that the set screw had been guarded by a covering of boards. If such covering had not been removed, or it had been promptly replaced after a temporary removal, it is reasonably certain that the accident to the plaintiff would not have occurred.

Whether the court was right in assuming that the plaintiff was entitled to have the jury consider the provisions of the statute as bearing upon the question of the defendant's duty toward the plaintiff, or not, I do not think, upon the evidence in this case, that it should be said, as a matter of law, that the defendant furnished the plaintiff a reasonably safe place in which to do his work.

Notwithstanding there were questions of fact in the case that required its submission to the jury, the trial court decided that the verdict was against the weight of evidence, and directed a new trial. It was held by this court in Larkin v. United Traction Co., 76 App. Div. 238, 78 N. Y. Supp. 538, in substance, that a judge presiding at a jury trial may set aside the verdict and direct a new trial although the case is one that was necessarily submitted to the jury, and in many cases even where the evidence given was sufficient to sustain the verdict. On the facts, the order for a new trial made by the court upon the judgment of the justice presiding at the trial as to the advisability of having the case presented to another jury must stand.

Order affirmed, with costs to abide the event. All concur; CHESTER, J., in result.