by demurring has admitted this allegation, it may not be proper, as it is not necessary, to discuss the question of jurisdiction from a viewpoint as if there were creditors, leaving that question to be disposed of when it arises necessarily.

[4] The learned court at Special Term was of opinion that the complaint was defective fatally, in that it did not contain an affirmative allegation that the person for whose benefit this action was brought was a resident of this state, and in reaching such conclusion it felt itself bound by the opinion in Zeikus v. Florida East Coast Railway Co., 144 App. Div. 91, 128 N. Y. Supp. 933. The decision in that case was based upon a complaint less ample than the one before us, and we do not find that in that case the learned court in the First Department attempted to base its decision upon any doctrine to the effect that, where an action was brought under a foreign statute by the administrator of a decedent who was a resident of this state, our courts would not entertain jurisdiction, unless the parties entitled to share in or take the whole of the recovery were residents of this state. We think that the question of the residence of the next of kin of the decedent is not an essential in conferring jurisdiction upon this court where, as in this case, the decedent was a resident of this state and the administrator was appointed by the courts of this state. We are of opinion that the Supreme Court of this state could, and under the circumstances shown in the complaint should, have taken jurisdiction of the cause of action set forth therein.

The judgment should be reversed, with costs, and the demurrer to the complaint should be overruled, with $30 costs, with leave to the defendant to answer the complaint within 20 days on payment of costs as aforesaid. All concur.

---

(153 App. Div. 507.)

WYNKOOP v. LUDLOW VALVE MFG. CO.

(Supreme Court, Appellate Division, Third Department. November 22, 1912.)

1. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

An employer may not defend on the ground that the employé in continuing in the employment with full knowledge of a danger assumed the risk as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*]

2. APPEAL AND ERROR (§ 1212*)—LAW OF THE CASE—SCOPE OF DECISION—NEW TRIAL.

Where the Court of Appeals reversed a judgment for an employé suing for an injury caused by his involuntarily placing his hand on an unguarded track of a traveling crane, because there was no evidence that it was practical to guard the track, and on a retrial there was evidence that a similar track in another factory was guarded to protect the employés from danger, the case must be submitted to the jury, and a new trial after verdict for plaintiff could not be granted on the authority of the decision of the Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4713; Dec. Dig. § 1212.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. DAMAGES (§ 130*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

Where, in a personal injury action, two juries awarded a verdict of $2,000 and another jury awarded $1,000, a fourth verdict for $6,000 was excessive, and must be reduced to $3,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370, 371; Dec. Dig. § 130.*]

Kellogg and Lyon, JJ., dissenting.

Appeal from Trial Term, Rensselaer County.

Action by William Wynkoop against the Ludlow Valve Manufacturing Company. From an order setting aside a verdict for plaintiff and granting a new trial, he appeals. Conditionally affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON BETTS, and LYON, JJ.

J. W. Atkinson, of Waterford, for appellant.

Rosendale & Hessberg and Peter A. Delaney, all of Albany, for respondent.

SMITH, P. J. This is the fourth trial of this action. The first trial resulted in a verdict for plaintiff for $2,000. The judgment thereupon was reversed in this court, and a new trial granted. The opinion is reported in 112 App. Div. 729, 98 N. Y. Supp. 1076, and states fully the circumstances under which the accident occurred. Upon the second trial the plaintiff had a verdict for $2,000, the judgment upon which verdict was reversed in this court (119 App. Div. 928, 104 N. Y. Supp. 1151) upon the ground that the plaintiff assumed the risk involved in the negligence which was made the basis of the plaintiff's cause of action. The third trial resulted in a verdict of $1,000, judgment upon which was affirmed in this court (126 App. Div. 939, 110 N. Y. Supp. 1150), and reversed in the Court of Appeals, as reported in 196 N. Y. 324, 89 N. E. 827, 30 L. R. A. (N. S.) 36. The fourth trial resulted in a verdict of $6,000. This verdict was set aside by the trial judge practically upon the ground that the Court of Appeals had determined that there was no negligence shown. From this order granting a new trial this appeal is taken.

[1] Under the case of Fitzwater v. Warren, 99 N. E. 1042, recently decided by the Court of Appeals, opinion not yet officially reported, the defendant cannot defend upon the ground that the plaintiff in continuing in the employment, with full knowledge of the danger, assumed the risk as matter of law.

[2] But the Court of Appeals, when this case was before that court, put the reversal upon another ground, and that was that the defendant was not required to guard the track over which this crane passed because it was impracticable. Judge Chase in the opinion says:

"There is no testimony in the record to show that it was practical to guard the rail or that such a rail is now or ever has been guarded in any similar or other factory."

Upon the retrial, however, evidence was introduced to the effect that in the General Electric Works in Schenectady a similar track was guarded so as to remove the danger to employés that here exists.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Prima facie it would seem that a guard rail might easily be placed in front of this track so that an employé working adjacent thereto would be protected in case he should fall or slip into danger. The proof that such a guard rail was in fact used to protect the employés from danger in another shop would seem to distinguish the case from the case as it appeared when it was considered by the Court of Appeals and would seem to present to the jury sufficient ground to enable them to say, in the exercise of their judgment, that the defendant was negligent in failing to guard this track. For these reasons, we are of the opinion that the case should have been submitted to the jury, and a new trial should not have been granted upon the authority of the decision in the Court of Appeals upon the former appeal.

[3] Three juries have heretofore passed upon this case, two of them giving verdicts of $2,000 and one $1,000. In view of these facts, we are of the opinion that the verdict is excessive, and that $3,000 would be a fair compensation for the injuries which plaintiff received.

The order should, therefore, be affirmed, unless plaintiff will stipulate to reduce the verdict to $3,000, and, if such stipulation be filed, judgment may be entered upon the verdict as modified. Upon the filing of the stipulation the order should be reversed upon the law, with the recital to the effect that the court has examined the facts and has approved of the determination of the jury thereupon.

Order affirmed, with costs, unless plaintiff stipulates to reduce the verdict to $3,000. If such stipulation be filed, judgment may be entered upon the verdict as modified. Upon filing stipulation, the order should be reversed upon the law, with a recital to the effect that the court has examined the facts and has approved the determination of the jury thereupon. All concur, except KELLOGG, J., dissenting in opinion in which LYON, J., concurs.

JOHN M. KELLOGG, J. (dissenting). Upon the third trial the plaintiff had a verdict of $1,000, which we affirmed by a divided court. That judgment the Court of Appeals reversed in 196 N. Y. 324, 89 N. E. 827, 30 L. R. A. (N. S.) 36, opinion by Chase, J., all concurring. The judgment of the Court of Appeals proceeded upon the theory that the law did not require this contrivance to be guarded. We quote from the opinion:

"There is no testimony in the record to show that it was practical to guard the rail, or that such a rail is now or ever has been guarded in any similar or other factory. The wheels of such truck were from 15 to 18 inches in diameter and the structure of the truck extended above the wheels, so that it was not possible to guard the track by a covering and continue its use. It is not suggested, and it does not appear, how the track could have been guarded except perhaps by the construction of a fence or partition at a point so far inside of the rail that it would not interfere with the truck, and at such a height as to prevent a person intentionally or by accident falling over it upon the track."

The appellant isolates from this quotation the first sentence, disregarding the remainder, and tries to bring himself within it by showing by one man that in one room in the General Electric Works at Schenectady, where cranes run upon a track 12 or 18 inches above the

floor, that in two cases out of many there is a fence built up to a height of about 3 feet, and then a wire screen from that up. It does not appear that this was ever done in any other place or with any other cranes. It appears by the witness Bartholomew, who had had 20 years' experience in the construction and installation and use of overhead traveling cranes, and who had traveled from the Rocky Mountains to Nova Scotia in such work, and who had seen or worked upon about a thousand of them, that he never saw an overhead traveling crane situated on the edge of a gallery three or four feet above the floor of the gallery guarded by any fence, iron apron, screen, or anything of the sort. I think if the Court of Appeals decision means anything it means that this crane was not required to be guarded, and that the danger, if any, was so apparent and the situation such that the ordinary man would not anticipate that an accident was liable to happen or that a guard was necessary. The isolated instance at the General Electric Works under circumstances which do not clearly appear and which are decidedly different cannot overcome the reasoning of that case. The opinion also states that where danger to the employé does not exist, and is not reasonably expected, it is not necessary to guard even the enumerated machines, and cites Glens Falls P. C. Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897, which says:

"We think, however, that the Legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. What evidently was intended was that those parts of the machinery which were dangerous to the servants whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors. Human foresight is limited, and masters are not called upon to guard against every possible danger. They are required only to guard against such dangers as would occur to a reasonably prudent man as liable to happen."

The opinion shows that there is no inherent danger in a track upon which a car or truck is run, that the danger of remaining on a track is neither hidden nor obscure, and continues:

"In this case, as we have seen, the track was elevated higher than an ordinary table, and the defendant's employés were not required to work upon or about it. Any contact with it would have to have been intentional or voluntary or arise from some intervening accident. There was no defect in the floor of the room to precipitate an accident. The possibility of a person falling while in such room and in falling of putting his hand in front of the wheel of the truck was so remote that an ordinarily prudent man would not guard against it. The track has been maintained in the same way for several years, and no previous accident had occurred. An experienced man would not have anticipated such an accident. The remote possibility of a person falling in front of approaching wheels exists in every case where vehicles of any kind are moved with or without trucks about the floor of a factory building or otherwise, or where steam or other cars are propelled upon rails along unfenced passenger platforms. It is one of those necessary and obvious dangers not commonly guarded against by fences or partitions, and which should not be held to be within a general statute for the 'protection of employés operating machinery.' If the Legislature requires fences to be erected in such cases, it should so state in a more specific enactment."

The Court of Appeals had in mind and said that it was not claimed that this track could be guarded by anything except a fence around it,

and held that that was not necessary. The evidence here brings forth nothing new but a fence, and it seems to me we cannot draw a distinction from that case upon the testimony as to one or two tracks at Schenectady differently situated and which are operated under different circumstances. The trial justice correctly interpreted that decision.

It is the law of this case, binding upon all courts, and, unless the Court of Appeals sees fit to overrule or limit it, the plaintiff cannot recover.

LYON, J., concurs.