ARTHUR J. DUFFY, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 29198.)

Court of Claims, January 31, 1950.

*A. E. Gold* and *James B. Gitlitz* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Arthur W. Mattson* and *David Marcus* of counsel), for defendant.

LOUNSBERRY, P. J. On January 15, 1937, while serving a sentence in Attica State Prison, and while working in the sheet metal shop in the prison, the claimant was struck on the right hand by the revolving emery wheel of a flexible shaft grinder and seriously injured. Following his release on parole in 1948, and while still on such parole, claimant filed this claim, charging the State with negligence in the maintenance and guarding of the grinder.

The State urges that under section 510 of the Penal Law the claimant lacks capacity to sue, and, hence, that the court has no jurisdiction to hear the claim.

Prior to 1946, section 510 provided: " A sentence of imprisonment in a state prison for any term less than for life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced."

It was well settled that under this section a person so imprisoned could not sue. (*Green* v. *State of New York,* 278 N. Y. 15.) It was also settled that the disability applied to a convict on parole. (*Lehrman* v. *State of New York,* 176 Misc. 1022.)

In 1946, however, on recommendation of the Law Revision Commission (N. Y. Legis. Doc., 1943, No. 65 (F), " Act, Recommendation and Study Relating to the Capacity of Certain Convicts to Sue."), section 510 was amended (L. 1946, ch. 260) by the addition thereto of the following further provision:

" But nothing herein contained shall be deemed to suspend the right or capacity of any of the following persons to institute an

action or proceeding in a court or before a body or officer exercising judicial, quasi-judicial or administrative functions, with respect to matters other than those arising out of his arrest or detention: * * *

" b. A person sentenced to state prison for any term less than for life, while he is released on parole."

The State points to the language " with respect to matters other than those arising out of his arrest or detention ", insists that claimant's injury arose out of his detention, and that, therefore, the amendment has changed nothing so far as this claim is concerned. The claimant, the State concludes, must still wait until the expiration of his sentence before presenting his claim.

This court considered the identical question in *Grant* v. *State of New York* (192 Misc. 45 [1948]) and there held that a convict injured while imprisoned might file his claim while on parole. In his opinion, Judge RYAN said (pp. 46–47):

" The question here to be decided is: Do the words in the amendment ' with respect to matters other than those arising out of his arrest or detention ' extend the suspension of civil rights of this claimant until the expiration of his maximum sentence? The deputy attorney-general asserts that the intent of the Legislature in excepting actions arising out of the arrests or detention was to prevent prosecution of an action such as the one at bar and to support his argument invokes a quotation from the notes of the Law Revision Commission. (See N. Y. Legis. Doc., 1946, No. 65 [F], pp. 5, 32, 33.)

" The amendment may affect actions and proceedings directly flowing from the arrest or detention. Perhaps it suspends actions for false arrest, false imprisonment or malicious prosecution. But, in our opinion, it should not be construed to apply to all causes which may arise *during* detention. We believe that the intent of the Legislature was to remedy the situation which existed in the *Lehrman* and *Hayes* cases (*supra*). Admittedly, under the decisions, claimant will be able to prosecute his suit on April 10, 1953, if he does not violate his parole or find himself again incarcerated at that time. Such delay may deprive both plaintiff and defendant of necessary and material witnesses. Justice dictates a prompt trial. Were claimant the victim of an automobile accident in the public street on any day since his parole began, his right to institute and prosecute, immediately, an action against an alleged wrongdoer, whether individual or corporation, would be recognized under the 1946 amendment. The Attorney-General concedes as much. To say that action on a wrong which claimant may have suffered while in prison

by reason of the negligence of a State employee must be postponed, while action on the hypothetical cause which we have assumed could be prosecuted, is narrow, illiberal, inconsistent and contrary to the present day American concept of the relation of State to man. (Court of Claims Act, § 8.) ''

The recommendation of the Law Revision Commission, which accompanied the proposed amendment, is brief and contains nothing which sheds any light on the meaning of the phrase, '' arising out of his arrest or detention '', or on the reason for its insertion in the amendment. It is accompanied by a study, quite unofficial in character and forming no part of the commission's recommendation, to which, however, both the State and the claimant appeal for support. Upon examination, however, it is obvious that the study was not designed for any such purpose. It is a general history and critique of the doctrine of civil death, of which section 510 is a statutory expression, and explores generally possible means of ameliorating or eliminating some of the inconsistencies and injustices arising from that doctrine. It does not, however, discuss as such the amendment to section 510.

The study inclines generally to the view that convicts should be permitted to sue, but recognizes, as the State is alert to point out, the objection that prisoners might resort to litigation as a means of securing temporary release for a trip to court, and that actions arising out of the arrest, prosecution and confinement of the prisoner might be so numerous and expensive as to harass officials and interfere materially with the performance of their duties, all to the disruption of prison routine and discipline. These are considerations which may have some weight with respect to actual prisoners, but they have little or no application to paroled prisoners, whose activities, whether in court or elsewhere, certainly do not bear on prison discipline.

In the absence, therefore, of any clear evidence of legislative intent to include in the exception of the statute any cause of action arising during confinement, we decline so to interpret the language in question, but reaffirm our decision in the *Grant* case (*supra*), for the reasons therein stated.

Turning now to the evidence, we discover that on the day of the accident the claimant was engaged in filing metal tables with a hand file. Next to him inmate Thomas C. Smith, an experienced grinder operator, was operating a flexible-shaft emery-wheel grinder, grinding rough spots from a large metal table. Smith switched off the power on the grinder, replaced the shaft in the special holder attached to the machine, and called to the

claimant to assist him in turning the heavy table. The claimant, whose back was to the grinder, swung about still holding a small table in his hand, and in some manner came into contact with the machine. It started up instantly, the shaft whipped loose from the holder, and the whipping, spinning emery wheel struck against the back of claimant's hand, causing a severe laceration.

It is virtually undisputed that there was no protective hood or guard on the emery wheel, of the type required under rule 992 of the Industrial Code (3 N. Y. Official Compilation of Codes, Rules & Regulations, p. 595), promulgated under the authority of section 28 of the Labor Law, or of any other type, and that none had been provided. We have repeatedly held that the Labor Law does not apply to the State in its relationship to prison inmates (*Beale* v. *State of New York,* 46 N. Y. S. 2d 824; *Lee* v. *State of New York,* 187 Misc. 268; *Gould* v. *State of New York,* 196 Misc. 488), but we have also held that Labor Law provisions and regulations issued thereunder establish a standard of care whereby the State may be judged. (*Beale* v. *State of New York, supra.*) By this standard, or by any sound standard, failure to place a guard over an emery wheel is negligence. The dangers of contact with the revolving wheel, or from flying bits or portions of the wheel, are well known and obvious.

We do not agree with the State that guards are required only for the protection of the operator. It is perfectly obvious that the orbit of perceivable danger extends to include all who may reasonably or properly be in the vicinity of the machines. The law includes such persons, of whom the claimant was one, in its protection. (*Walker* v. *Newton Falls Paper Co.,* 99 App. Div. 47; *Glens Falls Portland Cement Co.* v. *Travelers' Ins. Co.,* 162 N. Y. 399; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339.)

Neither do we find any merit in the State's argument that even if there had been a guard, the necessarily unguarded portion of the wheel would have struck the claimant. It is utterly unpredictable which portion of a high speed emery wheel attached to the end of a whipping flexible shaft would strike anything at any given moment. It is equally likely that the guard would have struck the claimant.

There is evidence that the State had caused and suffered the grinder to be equipped with a switch with a substituted arm of excessive length, unnecessarily exposed to accidental contact, and so loose that the machine might be set in operation by a jar. This is denied by State witnesses but such a condition furnishes a very plausible explanation of the sudden operation of the machine when the claimant turned and evidently struck

against it. Such a defective condition would, of course, constitute additional negligence on the part of the State, but we do not regard the point as crucial, since its absence would in no way relieve the State of the liability for the unguarded wheel.

We do not find any convincing evidence of contributory negligence on the part of the claimant. His behavior in swinging about at Smith's call was natural and normal. The machine was not operating and he had no reason to anticipate a sudden and unusual burst of activity from a mere accidental contact. To hold otherwise would be to hold that one comes into contact with a machine at rest, with its power off, at one's peril, an extraordinary rather than an ordinary standard of care.

Claimant's injury consisted of a severe laceration of the back of the right hand, which exposed the extensor tendons of the second, third, fourth and fifth fingers. Much dirt was ground into the wound and infection set in, with osteomyelitis of the third metacarpal. The result was severe flexion contracture of four fingers and contractural deformity so that claimant's hand remains closed at all times and useless — a 100% functional disability. Claimant suffered severe pain, some of which continues, and must at all times keep absorbent paper in his hand to absorb moisture and prevent irritation.

There is strong evidence that much of this unfortunate condition resulted from inadequate treatment by the prison physicians. Their method of cleaning the wound was sharply criticized by other physicians who testified, and it seems clear that no adequate measures were taken to prevent the contracture. There appears to have been a failure to grasp the seriousness and potential danger of the wound.

Our conclusion is that claimant's injury, suffering and permanent loss of use of his hand resulted from the negligence of the State, and that he is entitled to a recovery. In considering the amount thereof, his pain, deformity and loss of use of the hand are obvious factors. Somewhat less obvious is the matter of loss of earning capacity. Prior to the injury, claimant had demonstrated earning capacity of around $50 per week, plus additional earnings as a professional golfer. These avenues of employment and many others are closed to him. His earnings since his release have been about $12 per week. On the other hand, his record of three felony convictions would alone constitute a serious bar to employment, quite aside from his physical handicap. After weighing these various considerations, we have concluded that an award of $8,500 would be fair and reasonable damages for the pain, suffering and injuries received

by the claimant. Findings of fact and conclusions of law may be submitted in accordance with this memorandum within fifteen days of the filing thereof, otherwise this memorandum will be considered the decision.

Let judgment be entered accordingly.