THE GLENS FALLS PORTLAND CEMENT COMPANY, Respondent, *v.* THE TRAVELERS' INSURANCE COMPANY, Appellant.

*Employers' liability insurance — a forfeiture by a breach of a warranty requiring compliance with the law may be waived — public policy.*

In an action upon a policy of insurance, against loss from damages arising on account of injuries to employees, which had been issued by the defendant, and was conditioned upon a strict compliance on the part of the assured with the law relating to the protection of employees, and upon immediate and full information to the defendant with regard to all injuries occurring, and upon permission being given to the defendant to conduct the defense of actions brought on account thereof, or to settle them, it appeared that an employee of the plaintiff, who was injured by a set screw which projected from a revolving shaft left unguarded in violation of the amended Factory Act (Laws of 1892, chap. 673, § 8), brought an action against the plaintiff and recovered a judgment of $2,000.

The defendant's agents were informed of the accident within three days after its occurrence, and the nature of the employee's claim was afterwards disclosed to the defendant by a letter from the employee's attorney transmitted by the plaintiff to the defendant, who accepted the defense of the action, but afterwards abandoned it.

*Held,* that, assuming the failure to guard the set screw to be a breach of warranty fatal to the policy, under the condition as to plaintiff's compliance with the law, it rendered the policy voidable only, not void, and the defendant might waive the breach by acknowledging the validity of the policy with knowledge of the facts — of which the defendant in this case was fully informed;

That, while it was not necessary to show actual knowledge of the law by the defendant, a corporation admitted to transact business in the State of New York, yet sufficient information to act as a warning was in fact contained in the letter transmitted to the defendant regarding the employee's cause of action;

That such a waiver was not obnoxious to public policy, because it was not the condonation of the plaintiff's omission, but a waiver of any advantage which might accrue from it to the defendant.

APPEAL by the defendant, The Travelers' Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Warren on the 25th day of June, 1896, upon the verdict of a jury rendered by direction of the court after a trial at a Trial Term of the Supreme Court held in and for the county of Warren, and also from an order entered in said clerk's office on the 22d day of July, 1896, denying the defendant's motion for a new trial made upon the minutes.

In this action both parties consented to a direction of the verdict by the court, but each party requested the court to direct the verdict in its favor.

*Francis A. Smith* and *Grenville M. Ingalsbe*, for the appellant.

*Edgar T. Brackett* and *S. & L. M. Brown*, for the respondent.

LANDON, J. :

Jasmin, an employee of the plaintiff in its cement manufactory at Glens Falls, N. Y., while oiling the bearing of a revolving shaft, had his clothing caught by an uncovered set screw, five-eighths of an inch in diameter, projecting three-quarters of an inch from the collar of the shaft, and was in consequence whirled violently about the shaft and seriously injured. Jasmin brought an action against the plaintiff, charging it, among other things, with negligence in leaving the set screw unguarded in violation of section 8 of chapter 673 of the Laws of 1892, amending the Factory Act, so called, and recovered judgment against the plaintiff for $2,000, besides costs, and issued execution thereon, which the plaintiff satisfied by paying $2,127.21, the amount due thereon.

This plaintiff then brought this action against this defendant to recover said sum upon an insurance policy, issued by the defendant to the plaintiff and in force at the time Jasmin was injured, insuring the plaintiff against loss from common-law or statutory liability to plaintiff's employees who might be accidentally injured in its employment.

The policy was issued upon the written application of the plaintiff, the statements in which are therein declared to be warranties, and the application is made part of the policy. The policy also contains conditions which, so far as are here material, will be stated hereafter.

Upon the argument, the defendant's position was that the policy was void in its inception, because at the date of its issue the set screw was unguarded — a fact clearly established by the evidence — and that thus there was a breach of the following provision of the application : " The applicant promises to conduct all business and maintain all premises, to which the proposed insurance may apply, in strict compliance with all statutes, ordinances and by-laws providing for the safety of persons ; " that this provision of the application was promissory, and that, as the set screw was unguarded at the time of Jasmin's injury and was the cause of it, the promissory guaranty was violated.

Upon the evidence, we think the defendant was right in these contentions. (*Cogswell* v. *Chubb*, 1 App. Div. 95 ; *Chase* v. *Hamilton Ins. Co.*, 20 N. Y. 52 ; *Jackson* v. *St. Paul F. & M. Ins. Co.*, 33 Hun, 60 ; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136 ; *Alexander* v. *Germania Fire Ins. Co.*, 66 id. 464 ; *First National Bank of Ballston Spa* v. *Insurance Co. of North America*, 50 id. 45.)

This brings us to the main question discussed before us, whether the trial judge was authorized to find and hold that the defendant, with notice of the breach of the warranty, waived the forfeiture caused thereby.

It was stipulated, among the conditions of the defendant's liability, as expressed in the policy : 1. That the plaintiff should give the defendant immediate notice of the alleged injury, with full information.  2. That the defendant should have the sole right, and that it should be its duty, to negotiate settlements and adjustments of all claims made against the insured and covered by the policy.  3. That if the plaintiff should be sued upon any claim covered by the policy the defendant should, if it did not pay the full amount of its liability, defend such suit and have control of the defense.

The defense of the action of Jasmin against the plaintiff was at first assumed by this defendant, the insurance company, whose attorney interposed an answer in behalf of the plaintiff, the cement company, and took charge of the defense until the Saturday evening preceding Monday, November 11, 1895, the day upon which the Circuit convened in Warren county, at which the case was noticed for trial by the attorneys of both Jasmin and the cement company,

Mr. Ingalsbe, under the employment of the insurance company, acting as attorney for the cement company. It was understood by all the parties that the case would be tried at that Circuit. The insurance company, on the Saturday evening in question, gave the cement company notice that, owing to its recent discoveries in respect to the set screw, and the fact that the Factory Act was posted, under instructions from the Factory Inspector, in the cement factory, prior to the issue of the policy, the insurance company disclaimed liability under the policy and declined to assume any further charge of the defense, but was willing to assist in it and give the cement company the services of the attorney and counsel which the insurance company had retained in the case, but without responsibility for the result. The insurance company, by Mr. Harbison, its agent, had learned from Jasmin's attorneys that they would accept a judgment for $2,000 if the action should be undefended, and Mr. Harbison advised the cement company to settle upon that basis, still disclaiming responsibility. The cement company then employed counsel, who advised the cement company, under the circumstances, to leave the case undefended if Jasmin would limit his recovery to $2,000. This Jasmin's attorneys consented to do, and took judgment accordingly.

Assuming that the unguarded set screw was a breach of warranty, which went both to the inception and the continuance of the contract, then the cases are to the effect that the policy is not void, but voidable only at the option of the insurer; that the insurer may waive the forfeiture and take the benefit of the policy, but that in order to charge him with such waiver, from his acts acknowledging the validity of the policy, it must be shown that he, at the time of the waiver, had knowledge of the facts constituting the forfeiture. (*McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389; *Roby* v. *Am. Central Ins. Co.*, 120 id. 510; *Trippe* v. *Provident Fund Soc.*, 140 id. 23; *Titus* v. *Glens Falls Ins. Co.*, 81 id. 410.)

We think the evidence justified the finding that the insurance company knew all the material facts respecting the set screw when it served the answer for this plaintiff in the Jasmin action, and, although a non-resident of the State, was chargeable with knowledge of the law requiring set screws to be guarded.

Jasmin was injured December 28, 1894. The plaintiff gave notice

of it to Little & Carson,. the defendant's agents at Glens Falls. Little & Carson, December 31, 1894, wrote to the defendant a letter, which defendant received at Hartford, Conn., its place of business, in which they stated that one of plaintiff's "employees, while engaged in oiling a bearing, was caught by a set screw.in a revolving shaft by his clothing," and thereby injured. This was notice that the set screw was unguarded, else how could the employee have been caught by it? But it was not of itself notice in fact that the statute required the set screw to be guarded.

The defendant urges that as it was a non-resident of the State it was not chargeable with knowledge of the Factory Act, since it cannot be presumed to know the laws of a foreign State. (*Stedman* v. *Davis*, 93 N. Y. 32.) But to this rule there is this exception, stated in *Merchants' Bank of New York* v. *Spalding* (9 N. Y. 62), "Where an agreement is made in one State to be executed in another, as the laws of the latter country prevail in determining the validity of the contract, it is reasonable that the parties should be presumed to know the law of the country in reference to which they are contracting." This contract was countersigned by Little & Carson, defendant's agents in this State, was delivered to plaintiff in this State, and was to be performed in this State. We also think that a foreign insurance corporation, admitted under our laws to do business within this State, is chargeable in like manner as a domestic corporation with notice of such of our laws as affect that business.

But treating the defendant's knowledge of our law as a question of fact, it appears that on April 29, 1895, Messrs. Potter & Kellogg, attorneys at Glens Falls, sent a letter to the plaintiff in which they stated that Jasmin "has placed with us for our attention, a claim against you for personal injuries which he states he received by being caught in a set screw,· * * * the said set screw having been left unguarded contrary to the provisions of law." This letter the plaintiff handed to Little, Carson & Loomis, the defendant's agents, who mailed it to the defendant the following day.

This was notice sufficient to put the defendant upon inquiry as to our law in regard to set screws, and to justify the finding that it obtained the knowledge which such inquiry, diligently pursued, would secure. True, the letter, if disregarded, might not be fol-

lowed by a suit, but the facts were not such as to justify reliance upon Jasmin's abandonment of his claim. If the insurance company had then notified the cement company that it denied the validity of the policy, the latter company might possibly have settled with Jasmin upon more favorable terms than it afterwards did.

The insurance company waited and thus led the cement company to wait. September 3, 1895, the summons and complaint in the Jasmin suit were served upon this plaintiff, and by it placed in defendant's hands three days later. The defendant was then called upon under the terms of its policy to take its position, certainly before October 3, 1895, when it served the answer to Jasmin's complaint. It employed an attorney and through him made all the examination which it desired. The plaintiff gave him all the information and assistance requested and withheld no material fact. The result was that the defendant elected to recognize the validity of the policy and assume its liability under it as indemnitor and protector of the plaintiff against the Jasmin claim.

There was one fact which the defendant claims that it did not learn until the day it abandoned plaintiff's defense, and that was that under the direction of the Factory Inspector a copy of the Factory Act had been posted in plaintiff's factory before the policy was issued, and was there when issued. We do not deem this material. It was the duty of the plaintiff to guard properly this set screw irrespective of the action of the Factory Inspector.

The defendant insists that since it was a violation of the statute to leave the set screw unguarded, public policy forbade the defendant to waive or condone the violation of the law, and that, therefore, it could not waive the forfeiture thereby incurred. But the defendant did not ratify the plaintiff's omission; it waived the advantage which might accrue from it. The cases cited by the appellant relate to acts forbidden and not to omissions forbidden.

The distinction between waiving the benefit accruing from an unlawful omission and making a contract to produce or continue the omission, seems to be clear. The omission may be a mere want of forethought; the contract is a premeditated wrong; the one an accident, the other a crime. The statute may treat the accident as an offense so far as the punishment of the negligent person is concerned, but a

conviction for an omission of duty must be for a culpable omission; and whether it is culpable, is a fact for the jury under the circumstances. (*People* v. *Melius*, 1 N. Y. Crim. Rep. 39; *People* v. *Buddensieck*, 4 id. 230.)

Crimes by commission are essentially different from crimes by omission. Every one may be presumed to intend the natural consequences of his acts, and, in some cases, of his omissions; but he cannot be presumed to have intended or to have intentionally risked the consequences of an omission to which his attention was first called by the consequences resulting from it. We cannot say that this omission was criminally culpable; and, therefore, cannot say that the waiver of the benefit, accruing to the defendant because of it, was in any sense the subsequent ratification of a precedent offense.

This set screw was fifteen feet above the floor. It seems that it did not need to be approached except for oiling the axle of the shaft in the collar of which it was placed. The learned trial judge thought its position guarded it. We are constrained to hold otherwise, but, in so holding, we have the demonstration in the injury to Jasmin that it ought to have been guarded; and we infer thence that the Legislature was more prudent than the plaintiff. The best of men are sometimes careless and may need indemnity against loss resulting from their carelessness. The statute permits this kind of insurance. (Insurance Law, chap. 690, Laws of 1892, § 70, subd. 3.)

The plaintiff bought the insurance, and the defendant was permitted to sell it. Had there been an intention to violate the law in making the contract, doubtless the rule would be different. We are unable to see from the record that the allegations of error now urged by the defendant to the exclusion of testimony offered by it relate to material testimony. We are not advised as to what Mr. Harris said to plaintiff's superintendent, what further information the defendant requested of plaintiff, what admission the plaintiff's superintendent made to Mr. Harbison, and the court did not need to receive the Factory Inspector's copy of the Factory Act in order to hold the plaintiff advised with respect to that statute.

The judgment should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.