JOSEPH GORDON, INC., Appellant, *v.* MASSACHUSETTS BONDING AND INSURANCE COMPANY, Respondent.

First Department, March 7, 1919.

Insurance — policy indemnifying employer against claims for injury to employees — warranty by insured that he keeps no vicious horses — injury to employee by kick of horse alleged to be vicious — waiver of breach of warranty by assuming defense of action — inconsistent attitudes of insurer — construction of insurance policy — estoppel.

Where in a policy of insurance indemnifying an employer against loss from liability for bodily injuries to employees which might be caused by its horses or vehicles, the assured warranted that " no vicious horse or draft animal is used so far as the assured knows or is informed," the insurer, by undertaking the defense of an action brought by an employee who was injured by the kick of a horse which he claims was vicious to the knowledge of his employer and which had inflicted similar injuries to others, waived the right to disclaim liability upon the ground of breach of warranty by the assured and is liable for a judgment which was recovered by said employee.

Under the circumstances, if the insurer had succeeded in the defense it would not be liable on its policy and it cannot assume the inconsistent position that it is not liable because the employee recovered upon the ground that the horse was vicious to the knowledge of his employer, for in either event the insurer could lose nothing.

A policy of insurance prepared by an insurance company is to be construed strictly against it and in favor of the insured.

Where an insurer with full knowledge of all the facts assumes liability it is thereafter precluded from repudiating the same.

APPEAL by the plaintiff, Joseph Gordon, Inc., from a judgment of the Supreme Court in favor of the defendant, entered

in the office of the clerk of the county of New York on the 25th day of February, 1918, upon the verdict of a jury rendered after trial at the New York Trial Term dismissing the plaintiff's complaint.

*Lynn W. Thompson* of counsel [*Melvin G. Palliser,* attorney], for the appellant.

*Clayton J. Heermance* of counsel [*Harold L. Klein* with him on the brief; *Rosenthal & Heermance,* attorneys], for the respondent.

MERRELL, J.:

The plaintiff is a domestic corporation engaged in the coal and trucking business. The defendant is a foreign corporation organized under the laws of the State of Massachusetts, and is engaged in the liability insurance business.

On or about April 1, 1913, upon due consideration, the defendant issued a policy of insurance whereby it agreed to indemnify the plaintiff against loss from the liability imposed by law by reason of bodily injuries accidentally suffered by any person by means of horses or draft animals or vehicles belonging to the plaintiff. In carrying on its business the plaintiff employed several teams of horses and men to drive the same. On February 21, 1914, within the life of said policy, one Andrew Kelly, an employee of the plaintiff, suffered injuries, including a broken leg, as the result, as he claimed, from a kick of one of plaintiff's truck horses. On the same date the plaintiff corporation, the assured under said policy, by letter addressed to Mr. D. A. W. Waigt, manager of the insurance department of Slawson & Hobbs, the brokers who had obtained said policy from the defendant company, gave notice that their said driver had been that morning injured while driving a coal cart and had received a broken leg, and asked the brokers to report such injury to the defendant company. Shortly thereafter the said brokers by letter reported such accident to the defendant company and asked the defendant to give the matter prompt attention. The day following said notification from the insurance brokers the defendant insurance company acknowledged receipt thereof and stated in writing that the case seemed to warrant personal

investigation, which it would receive in the regular way, and asked of the insurance brokers information as to any further notice brought to their attention concerning the accident. On March 26, 1914, the said insurance brokers again wrote the defendant company, inclosing a communication sent to the assured by the Legal Aid Society relative to the injuries received by said Kelly. In the inclosed communication from the attorney for the Legal Aid Society the assured was informed that the injured man claimed that without fault on his part he was kicked by a horse of the assured without having previously been informed of the dangerous nature of said animal. This letter from the brokers and its inclosure were received by the bonding company on March 27, 1914. On March 31, 1914, the defendant, by H. W. Dilg, manager of its casualty claim department, wrote the brokers acknowledging receipt of their letter and advising that the defendant had written to the Legal Aid Society telling them that they had been misinformed regarding the alleged viciousness of the horse. On April 9, 1914, the manager of the defendant's claim department on the letterhead of the defendant wrote said brokers inclosing a carbon copy of a letter written to the assured, the plaintiff herein, on the same date with reference to the accident, and stating to the brokers that when the insurance company had made its original investigation of the accident they were informed that the horse which caused the injury was an old animal never known to kick or bite, but that their later investigation showed not only that the horse had been known to kick before, but that they had already received reports of injuries to other employees caused by the same horse, and that under breach of warranty of the policy the company would disclaim liability, as per carbon inclosed. In the letter to the assured of even date, April 9, 1914, the company stated to the assured that they returned therewith the letter from the Legal Aid Society, calling attention to the fact that the horse which injured the employee was known to be vicious, as their record showed that he had kicked one or more persons, and according to the warranties of the policy that the assured had no vicious horse or draft animal within the knowledge of the assured, disclaiming all liability on the part of the company in handling the accident.

Among the various so-called warranties under which the policy was issued it was provided that " No vicious horse or draft animal is used so far as the Assured knows or is informed: No exceptions."

By such letter of April 9, 1914, the defendant bonding company advised the plaintiff of its position in the matter; that inasmuch as the injury to plaintiff's employee was from the kick of a vicious horse and known to be vicious, they would disclaim all liability under their policy. Immediately upon receipt of such letter the president of the assured, in company with Mr. Waigt of the insurance brokers' concern, on April 10, 1914, called at the office of the defendant company at Maiden Lane and William street, New York city, and there had a conversation with Mr. Dilg, the manager of the defendant's casualty department, and who had written the several letters addressed to the brokers and to the plaintiff. In the conversation which then took place the plaintiff's president expressed to Dilg great surprise at the position which the company was taking, and stated that the horse was never vicious, and that the company had never had any report of the horse being vicious, and that they could prove the contrary, and that the plaintiff would expect the insurance company to live up to its policy and take care of the suit and pay any damages that might accrue as the result thereof. To this the manager of defendant's casualty department, after consulting their papers, stated that they would take care of the suit and assume responsibility, if any suit was brought. In the same connection the plaintiff's president stated to Dilg that it was not a very serious matter, and that the plaintiff's president was under the impression that he knew how to handle men of this character; that the claim could be settled probably for a very little money; and that Dilg replied that it would not be necessary for the plaintiff's president to give himself any further concern; that the company would handle the case in his interest. Following this conversation and on April 13, 1914, Mr. Waigt of the insurance brokers wrote the defendant referring to their letter of April ninth disclaiming liability, that as their Mr. Dilg had informed plaintiff's president and the writer on the tenth instant that it was the intention of the insurance company to

assume the liability in the case, that the company immediately confirm the same in writing. On the day following, April 14, 1914, A. E. Holmes, attorney for the defendant insurance company, wrote the said insurance brokerage firm upon the letterhead of the defendant company the following letter:

" F. J. Falvey, President,
     " Gaston, Snow & Saltonstall, Gen'l Counsel,
          " John T. Burnett, Sec'y and Treas.
     " MASSACHUSETTS BONDING AND INSURANCE COMPANY,
" (Emblem)
               " Fidelity and Surety Bonds,
     " Liability, Automobile, Accident, Health, Plate Glass,
          " Burglary and Theft Insurance.
          " Home Office, Boston Massachusetts.
" Casualty Claim Department,
     " H. W. Dilg, Manager,
          " 84 William Street,
               " Telephone 234 John.
                    " NEW YORK, N. Y., *April 14th*, 1914.
          " IN RE: ANDREW KELLY, N. Y.   9310.
               " Joseph Gordon, Inc.
                    " Assured.
" SLAWSON & HOBBS,
     " 162 W. 72nd St.,
          " New York City:
     " GENTLEMEN.— We beg to acknowledge receipt of yours of April 13th, and pursuant to personal conversation had with Mr. Dilg to which you refer in said letter, we would say that we have assumed the liability in this case.
                         " Yours, etc.,
" AEH/AMA                    A. E. HOLMES."

There is no question but that Holmes was the attorney for the defendant insurance company at that time and had full authority to bind the company. In the subsequent litigation between Kelly and the assured, Holmes, as attorney for the insurance company, acted as attorney for the defendant and conducted the litigation. On some of the letterheads introduced in evidence the name of Holmes appears as attor-

ney for the company. No other indication but that the company intended to assume liability in the case under its policy appears during the succeeding steps taken by the injured man to enforce his claim for damages. On June 9, 1914, the insurance brokers wrote the defendant insurance company of the receipt of notice of claim theretofore received by the plaintiff corporation, which notice was signed by the injured man, and inclosed to the defendant company the original notice. In this notice the claimant set forth the cause of his injuries to be the kick of an unkind, vicious and ugly horse, possessing a tendency to kick, and that the accident occurred through the negligence and want of care of the assured. On June 12, 1914, upon the letterhead of the defendant bonding and insurance company, their lawyer, Holmes, wrote the insurance brokers acknowledging receipt of their letter and the notice therein inclosed and stated that the same was receiving their attention. Nothing further was heard of the matter prior to June 19, 1914, when the insurance brokers again wrote the defendant bonding and insurance company, referring to the claim against the assured and inclosing therein a summons which had been served upon the assured by the attorney for Kelly, and asking that the matter be given prompt attention. Thereafter, pursuant to its assumption of liability, the bonding company undertook the defense of said action, and by its attorney, Holmes, appeared therein, and the complaint in the action commenced by the service of said summons was served upon said attorney, which complaint set forth the nature of the injuries sustained by plaintiff's employee and the claim that such injuries were caused by the kick of a wild, ugly, untamed and unkind horse, of whose propensities the plaintiff in this action had due knowledge. The answer to said complaint was prepared and signed by the attorney for the insurance company, Holmes, and verified by plaintiff's president. Thereafter a bill of particulars was obtained setting forth more particularly the nature of the injuries to said driver, and a still further bill of particulars was served stating that the injuries suffered were the result of a kick from an ugly, untamed and unkind horse, which had on one former occasion injured another employee of the assured. The first bill of particulars was

First Department, March, 1919.  [Vol. 186.

verified on January 22, 1915, and the second on April 5, 1915. On April 10, 1915, the manager of defendant's casualty department wrote the plaintiff that the bill of particulars had been received from the plaintiff in the employee's action wherein the said employee insisted that the horse was vicious and had exhibited such traits toward a man by the name of Alexander Sweeney, and stating further that the plaintiff would recall that the insurance company had agreed to handle the matter on behalf of the assured believing the assured was being wrongly sued, and that with the assistance of the assured they had obtained statements from employees to the effect that the horse had never appeared to be vicious, and stating that the company desired to remind the assured that if it be proven by plaintiff that the horse was vicious to the knowledge of the assured prior to the happening of this accident, the company would not be responsible for any judgment obtained, and asked further identification of the man Sweeney. This letter seems to be somewhat at variance with the letter of April 14, 1914, wherein, without qualification, and with full knowledge of the claim made by the injured man that the accident resulted from the kick of a vicious horse, the company assumed liability in the case. By this letter of April 10, 1915, the insurance company is evidently attempting to limit the liability which it had theretofore apparently assumed without qualification. Upon receipt of the letter of April 10, 1915, the plaintiff wrote the manager of defendant's casualty claim department stating that the plaintiff had several witnesses to prove that the horse was not of a vicious character, and that the accident was aggravated by the man hitting him and kicking the animal before the horse kicked the man, and, as to the injury of Sweeney, stating that the plaintiff had proof that he had kicked the horse prior to the animal kicking him. The insurance company did not reply to said letter, and shortly thereafter plaintiff's president again called at the place of business of the bonding and insurance company and saw Mr. Dilg, manager of its casualty claim department, and stated to him, according to the testimony of plaintiff's president, that he, said president, was very much surprised; that in company with Mr. Waigt of the insurance brokers over a year before he had explained

everything, and that the company had agreed to take care of the case and assume responsibility. The plaintiff's president further stated to Dilg that he had had the horse for six years and never had a complaint about its kicking any one, only the man Sweeney, whose foot the horse had stepped upon, and stated to Dilg that the plaintiff expected them to pay the bill as they had agreed to do, and that he figured they would have no further trouble; that it was up to the company, and that the insurance required them to assume responsibility and pay any judgment obtained. The plaintiff's president then stated that he had never had a complaint about the horse, to which Dilg replied that if the horse had never kicked anybody they would be responsible. The president thereto replied that he never had heard any complaint of the horse, and that he had had him seven years in his employ, to which Dilg replied that they had assumed responsibility and would look after the case. From that time on plaintiff received no further intimation but that the defendant bonding and insurance company was looking after the case, until early in December, 1915, when the defendant bonding and insurance company, per A. E. Holmes, its attorney, wrote plaintiff to the effect that the case was upon the calendar for trial and would be reached probably sometime during the week when the letter was written. In this letter it was further stated:

"Pursuant to the terms of our letters to you, we have prepared this case for trial, but will not be responsible for any judgment which may be rendered against you at said trial, if it is proven that you had knowledge of the vicious character of the horse in question, before the accident to Mr. Kelly."

This letter was also at variance with the company's prior assumption of liability, and qualified such assumption by stating that they would be responsible only in case it developed that the accident did not occur as the result of a kick from a horse known to be vicious by the assured. The position finally taken by this insurance company was, of course, entirely safe, because there could be no recovery in the action unless it appeared that the assured had knowledge of the vicious propensities of the horse which kicked the employee. Scienter

or knowledge of the vicious propensities of the horse was a necessary element to any recovery in the action, of which fact the insurance company was, of course, fully aware.

As the result of the trial of the action which followed, the employee recovered a verdict upon which judgment was entered in the sum of $5,149.40, and which judgment at the date of the trial of this action amounted in the aggregate with interest to the sum of $5,793.07. Upon the rendition of such verdict and the entry of judgment against the plaintiff herein the defendant bonding and insurance company refused to appear further in the action and an appeal was taken by the plaintiff personally from the judgment entered against it, and the judgment was affirmed in this court. (*Kelly* v. *Gordon, Inc.,* 175 App. Div. 929.) Subsequently the judgment was paid, and this action was brought under the aforesaid policy of insurance to recover of the defendant company the amount of the judgment rendered against the plaintiff in said action, with costs and interest. The defendant answered, disclaiming liability and alleging by way of defense that the injuries were caused by the kick of a vicious horse and known to be such by the plaintiff herein, and that said horse was kept and used by the plaintiff in violation of its warranty annexed to and forming a part of said policy, and that by reason of such breach of warranty the defendant was not liable under said policy. At the close of the evidence, upon motion of the defendant, the trial court granted a nonsuit and dismissed plaintiff's complaint, the court, in effect, holding that under the terms of the policy there was no liability unless the defendant had waived the provisions with reference to the use of a vicious horse, and that the evidence failed to show that there had been such a waiver.

In such disposition of the case I think the court clearly erred. While the policy contained a provision that there should be no waiver of any of the terms of the policy or conditions or warranties thereof, unless indorsed thereon and signed by the president, a vice-president, secretary or assistant secretary of the company, nevertheless, by the assertion of the company, with full knowledge of the facts that it was claimed on the part of the employee that the injury was the result of the kick of a vicious animal and known to be vicious by the

assured, that the company would assume liability, and thereafter assuming entire control of the defense of the action which was brought, depriving the plaintiff of itself interposing the defense and controlling the same, virtually forbidding the plaintiff from making a settlement with its injured employee, which plaintiff stated could be made for a reasonable sum, and with full knowledge of all the facts in the case — that by such acts on the part of the defendant it is estopped from now claiming that it is not liable under said policy to reimburse the plaintiff for moneys which it has paid out as the result of the accident.   The position now assumed by the defendant company is that inasmuch as this accident occurred from the kick of a vicious horse, it was never liable under said policy.   I do not think that such is the case.   The policy insured plaintiff " for damages on account of bodily injuries * * * accidentally suffered by any person or persons by means of the horses or any draft animals or vehicles " employed by plaintiff in its business.   This policy was prepared by the defendant company, and under well-settled authority is to be construed strictly against the insurance company and in favor of the assured.   It clearly covered an accident of the nature of that proven here.   That the defendant believed it was liable is evidenced by the fact that it assumed the defense of the action.   If it is right in its present position it was never liable, and it undertook the defense of an action well knowing that there could be no recovery unless facts were proven which it now claims absolved it from liability. It assumed the role of defender of the plaintiff with the knowledge that if it succeeded in such defense and no recovery was had there would, of course, be no liability, and with the full knowledge that there could be no recovery, excepting upon facts which it now claims relieve it from any responsibility. In other words, whatever the outcome of the litigation which it defended, the company stood to lose nothing.   It was a winner if it succeeded in the plaintiff's defense, and it was a winner if such defense was unsuccessful.   I do not think the company should be permitted to assume such a position. By its very acts, knowing as it did that the claim of the plaintiff was based upon the known viciousness of the horse, in assuming the defense it is estopped now from disclaiming

liability under the policy, the trial having resulted adversely to its assured. By its acts in assuming the defense of the action, as well as its expressed intention to assume liability under the policy, the defendant signified an intent to treat the policy as covering the peculiar accident that occurred to plaintiff's employee, and by those acts, I think, effectually estopped itself from later disclaiming liability under the policy. From the time when the defendant acknowledged its liability for the accident on April 14, 1914, it fully understood the precise nature of the injuries sustained by the plaintiff's employee, and being fully advised as to the claim of the injured man with reference to the cause of his injuries, the defendant assumed liability and undertook the defense of the action to the exclusion of the plaintiff herein. The law is well settled in this State that where an insurer with full knowledge of all the facts assumes liability it is thereafter precluded from repudiating the same. (*Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410, 418; *Rosenbloom* v. *Maryland Casualty Co.*, 153 App. Div. 25; *Royle Mining Co.* v. *Fidelity & Casualty Co.*, 126 Mo. App. 104.)

In *Rosenbloom* v. *Maryland Casualty Co.* (*supra*) the language of Mr. Justice SCOTT, unanimously concurred in by this Appellate Division, is in point. Justice SCOTT said: " The defense mainly relied upon is that the injury for which Goldstein recovered judgment was not a liability insured against by the terms of the policy. Whether it was or not is perhaps open to question, but that question we are not called upon to consider. As has already been said the complaint in the Goldstein case disclosed precisely the nature of his claim and the ground upon which he sought to hold the owners liable, so that when the defendant assumed the defense of the action it had every means of ascertaining whether or not the loss was one for which it was liable under its policy. It is perfectly well settled that under such circumstances, an insurer who has, with full knowledge, undertaken the defense of an action, and deprived the assured of any control of it, will be deemed estopped to deny that the accident was within the terms of the policy. (*Glens Falls Cement Co.* v. *Travelers' Ins. Co.*, 11 App. Div. 411; affd., 162 N. Y. 399; *Brassil* v. *Maryland Casualty Co.*, 147 App. Div. 815; *Royle Mining*

*Co.* v. *Fidelity & Casualty Co.*, 126 Mo. App. 104; *Fairbanks Canning Co.* v. *London Guaranty & Accident Co.*, 154 Mo. App. 327; *Tozer* v. *Ocean Accident & Guarantee Corp.*, 94 Minn. 478; *Globe Nav. Co.* v. *Maryland Casualty Co.*, 39 Wash. 299.)   As this court pointed out in *Brassil* v. *Maryland Casualty Co.* (*supra*), the position of an insurer who denies its liability from the first and refuses to defend, is quite different from that of one who elects to defend and thus ousts the assured from any opportunity to defend himself."

I think under the foregoing authorities that by its conduct the defendant bonding and insurance company clearly waived the right to disclaim liability through any breach of warranty with reference to the use of a vicious horse in plaintiff's business.   By undertaking the defense of the action, as well as by its repeated assertion in writing to the plaintiff, it manifested an intention to overlook the possible defense which it might have to an action upon the policy by reason of a breach of such warranty, and having once assumed liability with full knowledge of the facts it could not thereafter disclaim such liability.   The defendant, by its acts, estopped itself from thereafter assuming an inconsistent position.   In assuming the defense of the action and in precluding the assured from making a reasonable settlement with the injured party, the insurance company deprived this plaintiff of substantial rights.   It was of little moment to the defendant whether the defense which it interposed in the action by the employee was successful or not.   If successful, of course, it would be relieved from any possible liability; if unsuccessful and the employee was able to recover a verdict, such verdict could be predicated alone upon facts which the insurance company alleged absolved it from liability under the policy. Had this plaintiff been permitted to have interposed its defense, very likely it might have been successful therein.   Defendant's assumption of the burden of the defense deprived the plaintiff of its right to carry on the same, and this being so, the defendant cannot withdraw at this time and disclaim liability under the policy of insurance by virtue of the terms of which it defended the action.

I think the nonsuit was improperly granted, and that

the judgment entered thereon should be reversed and a new trial granted, with costs to the appellant to abide event.

CLARKE, P. J., LAUGHLIN, PAGE and SHEARN, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.